UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-461-GWU

DUSTY SPARKS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Dusty Sparks brought this action to obtain judicial review of an administrative decision terminating his Child's Supplemental Security Income (SSI) upon redetermination of his disabled status as an adult. The case is before the court on cross-motions for summary judgment.

## LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 <u>strict</u> standards for child's SSI claims were adopted. The Welfare Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

Thus, a child's SSI claim can be granted now only if there is a "marked and severe functional limitation(s)." The impairment must meet, medically equal, or functionally

1

equal in severity one of the Listing of Impairments (LOI) found at 20 C.F.R. Part 404, Subpart P, Appendix 2. 20 C.F.R. § 416.924.

The implementing regulations require the agency to determine if the child's impairment(s) meet any LOI sections found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924. If this step is not satisfied, the fact finder is required to consider limitation of specific functioning, broad areas of development or functioning, episodic impairments, and limitations related to medication effects to determine "functional equivalence" to the LOI. 20 C.F.R. § 416.926a. Functional equivalence is established if the child has one area of extreme functional limitations (i.e., very serious interference with functioning) or two areas of marked limitation (i.e., serious interference with functioning). Id.

## PERIODIC REVIEWS FOR DISABLED CHILDREN

The regulations provide for periodic review of continuing eligibility for Child's SSI benefits. 20 C.F.R. § 416.994a(a).

The agency first determines if there has been "medical improvement," or any decrease in the medical severity of the impairment(s) present at the time he was most recently determined to be entitled to benefits. 20 C.F.R. § 416.994(a)(1), (c).

Even if there is no medical improvement, benefits will be terminated if substantial evidence shows that based on new or improved diagnostic techniques or evaluations, the impairment is not considered as disabling as it once was, or

2

when substantial evidence demonstrates that any prior disability decision was in error.  20 C.F.R. § 416.994a(e).

A claimant's benefits may also be terminated due to improper activity or negligence on his part. 20 C.F.R. § 416.994a(f).

At any rate, once a claimant reaches 18 years of age, his claim becomes subject to a new redetermination under adult standards for disability, using the rules for determining initial eligibility, rather than any medical improvement standard. 20 C.F.R. § 416.987 (2002).

## ADULT STANDARDS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

    7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

5

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

06-461 Dusty Sparks

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

8

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The procedural history reveals that Sparks was awarded Child's SSI in 1992. (Tr. 38). In 2003, following attainment of his 18th birthday, the plaintiff underwent a review of his disability status under the adult standards pursuant to 42 U.S.C. § 1382c. (Tr. 15). The claimant was found to no longer be disabled as of October 1, 2003. (Id.). This decision was affirmed at all administrative levels and Sparks filed suit in federal district court. (Id.). At the request of the defendant, the court reversed and remanded the action pursuant to Sentence Six of 42 U.S.C. § 405(g) on January 10, 2007. Docket Entry No. 10. Following the remand, the Administrative Law Judge (ALJ) learned that the plaintiff had returned to work and now sought only a closed period of SSI benefits between October 1, 2003 and December 31, 2006. (Id.). The ALJ issued another denial decision on June 22, 2007. (Tr. 15-21). The Commissioner then filed a motion to redocket the case in federal district court which was granted by the undersigned. Docket Entry No. 11, 12.

In the current denial decision, the ALJ concluded that Sparks, a 21-year-old man with a high school education and no past relevant work history, suffered from

06-461 Dusty Sparks

impairments related to borderline intellectual functioning, right auditory microtesia and atresia with right-sided hearing loss,[1] migraine headaches, and right knee ligament strain. (Tr. 18, 20). Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of heavy level work. (Tr. 18). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 20-21). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.).

The hypothetical question presented to Vocational Expert Martha Goss included an exertional restriction to heavy level work, restricted from a full range by such non-exertional limitations as (1) a need to avoid exposure to excessively noisy environments or a need for hearing protection; (2) an inability to perform work requiring acute hearing for safety or job performance; (3) an inability to ever operate foot controls with the right leg; (4) an inability to ever kneel or crawl; (5) a restriction to entry level work with only one-two-three step procedures and no frequent changes in work routines; (6) an inability to perform work requiring problem solving, independent planning or advanced literacy; and (7) no more than occasional interaction with the general public. (Tr. 819-820). In response, the witness

---

[1] Atresia refers to the "congenital absence or closure of a normal body orifice or tubular organ." Dorland's Illustrated Medical Dictionary, (27th Ed. 1988) at page 164. The plaintiff was born with a deformed ear canal which has affected his hearing.

06-461  Dusty Sparks

identified a significant number of jobs in the national economy which could still be performed.  (Tr. 820-821).  Therefore, assuming that the vocational factors considered by Goss fairly characterized Sparks' condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  No treating or examining source, including the staff of the Hyden Rural Health Clinic (Tr. 534-536), the staff at Mary Breckinridge Healthcare (Tr. 564-579, 646-755, 757-760, 782-786), and the staff at the Anne Wasson Rural Health Center (Tr. 644-645) identified the existence of more severe physical restrictions than those found by the ALJ.  Therefore, this portion of the administrative decision is supported by substantial evidence.

The ALJ also dealt properly with the evidence relating to Sparks' mental impairment.  Psychologists Lea Perritt (Tr. 541-542) and Jane Brake (Tr. 580-581) each reviewed the record and opined that Sparks would be "moderately" limited in his ability to understand, remember and carry out detailed instructions as well as to maintain attention and concentration for extended time periods.  The mental factors of the hypothetical question appear essentially consistent with these somewhat differently worded restrictions.

06-461 Dusty Sparks

Sparks sought treatment for his mental problems at the Kentucky River Comprehensive Care Center. More severe mental limitations than those found by the ALJ were not imposed. (Tr. 787-799).

Psychologist Ingram Baldwin examined Sparks in July of 2003 and administered intelligence testing which revealed a verbal IQ score of 80, a performance IQ score of 76 and a full scale IQ score of 76, all scores within the borderline range of intelligence. (Tr. 539). Baldwin diagnosed borderline intellectual functioning. (Tr. 540). The examiner also did not impose more severe mental restrictions than those found by the ALJ.

Sparks argues that the ALJ erred in relying upon the opinion of Baldwin in finding that he was of borderline intelligence and asserts that the ALJ should have relied upon earlier intelligence testing indicating that his IQ was in the mental retardation range. Intelligence testing administered in 1999 by school psychologist Sincelia House, when the plaintiff was 14 years old, revealed a performance IQ score of 69 and a full scale IQ score of 68, both in the mild mental retardation range. (Tr. 517). However, the administrative regulations indicate that IQ testing results generally do not stabilize until the age of 16 and scores obtained between the ages of 7 and 16 are considered current for only four years. 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1, § 112.00(D)(10). Thus, these earlier scores would not be current and could not be relied upon to offset Baldwin's testing at the

06-461 Dusty Sparks

age of 18. Baldwin noted the earlier scores, but considered his scores to be valid based on the claimant's interests, activities and verbal ability. (Tr. 540). Under these circumstances, the ALJ could rely upon Baldwin. Therefore, the court must reject the plaintiff's argument.

Following remand of the action, the ALJ did not obtain new vocational testimony but instead chose to rely upon that of Martha Goss, who had testified at the May, 2006 hearing when this action was first before the ALJ.[2] The plaintiff argues that this action was erroneous and asserts that it violated the court's order of remand which required the ALJ to obtain additional vocational testimony. However, in the remand order, the undersigned merely granted the defendant's own motion for remand to consider new evidence without any additional requirements. Docket Entry No. 10. The court's review of the current record reveals that no new additional evidence was submitted which would make reliance upon the testimony of Goss improper. As previously noted, substantial evidence supports the hypothetical factors considered by Goss. Therefore, the undersigned finds no error.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment

---

[2] Vocational Expert Carroll Tarvin was present at the May 21, 2007 hearing held following the court remand but was not called to testify by the ALJ. (Tr. 824).

13

06-461 Dusty Sparks

motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 10th day of September 10, 2008.

Signed By:

*G. Wix Unthank*

United States Senior Judge